**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Jose Manuel SEGURA–DEL REAL,**
**Defendant–Appellant.**

**No. 95–10299.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1996.

Decided April 30, 1996.

Mary McNamara, Assistant Federal Public Defender, San Francisco, California, for the defendant-appellant.

Susan E. Olney, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

Before: REINHARDT, THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge.

Jose Manuel Segura–Del Real pleaded guilty to a one-count indictment for illegal reentry by an alien after deportation subsequent to conviction in violation of 8 U.S.C. § 1326(b)(1). The district court departed upward from the Sentencing Guidelines and sentenced Segura–Del Real to 41 months in prison. Segura–Del Real appeals this sentence arguing that his prior criminal record, which placed him in criminal history category VI, was not sufficiently egregious to permit the court to depart upward from that category, and in any event the extent of the district court's upward departure was unreasonable.

We have jurisdiction under 28 U.S.C. § 1291 and we affirm. We hold that a sentencing court may depart upward from criminal history category VI based upon a defendant's repetition of a series of offenses which are the same or similar to the defendant's crime of conviction; and that the record supports the reasonableness of the extent of the district court's departure.

## FACTS

Under the Sentencing Guidelines, Segura–Del Real had an offense level of 10 and a criminal history category of VI. The district court found that he had 17 prior convictions which added up to 26 criminal history points. He had several convictions for immigration violations, including one previous conviction for illegal reentry.

At the first hearing to determine Segura–Del Real's sentence, the district court stated it was inclined to depart upward and sentence Segura–Del Real to the statutory maximum of 5 years. The court commented:

> [Segura-Del Real's] handling or his treatment of his status in reentry into the United States is what I would call a scofflaw. He just goes out and in again without any appreciation for what he is doing by way of violating United States laws. And I don't see why the citizens of this district or law enforcement in this district should be made to put up with a person with 17 prior convictions.

The court postponed sentencing so that Segura–Del Real would have time to prepare arguments against imposition of the maximum five-year sentence.

At the second sentencing hearing, Segura–Del Real argued against departure. He suggested, however, that if the district court were to depart, the appropriate sentence range should be between 45 and 48 months, rather than the maximum of five years. His counsel justified this suggested sentence range by arguing that if Segura–Del Real's criminal history category were extended incrementally beyond category VI, his 26 criminal history points would place him in theoretical criminal history category X. This category would have a sentence range of 45–48 months. He argued that using this meth-

odology, Segura–Del Real should be sentenced within this range.

The district court commented that the "sheer magnitude" of the number of Segura–Del Real's convictions "indicates that his criminal history category is understated." The court acknowledged the minor nature of most of Segura–Del Real's prior crimes, but emphasized that among those convictions were repeated immigration violations. The court then departed upward pursuant to Guidelines § 4A1.3, and sentenced Segura–Del Real to 41 months in prison. This appeal followed.

## DISCUSSION

### A. Standard of Review

■■■ We review de novo the question whether a district court has authority to depart from the Sentencing Guidelines. *United States v. George*, 56 F.3d 1078, 1084 (9th Cir.1995). We review the extent of the district court's upward departure "to determine whether it is 'unreasonable.'" *United States v. Lira–Barraza*, 941 F.2d 745, 747 (9th Cir.1991) (en banc), citing 18 U.S.C. § 3742(e)(3).

### B. Authority to Depart

■■■ Departure from the Sentencing Guidelines is warranted when a defendant's criminal history category significantly underrepresents the seriousness of his criminal history or the likelihood that the defendant will commit further crimes. Guidelines § 4A1.3 (1994). A district court may not depart upward from category VI, however, except in the unusual case where the defendant's criminal record is significantly more serious than that of other defendants whose criminal records place them in that category. *United States v. Carrillo–Alvarez*, 3 F.3d 316, 320 (9th Cir.1993).

■■■ An upward departure from category VI is permissible when a district court finds that a defendant has a long record of criminal conduct of escalating seriousness and prior incarcerations have not affected his propensity to commit crimes. *United States v. Singleton*, 917 F.2d 411, 413 (9th Cir.1990); *see also United States v. Durham*, 941 F.2d

858, 863 (9th Cir.1991). The mere fact that a defendant has a long criminal record, however, will not, of itself, support an upward departure. *United States v. George*, 56 F.3d 1078, 1085 (9th Cir.1995); *Carrillo–Alvarez*, 3 F.3d at 322–23. In *Carrillo–Alvarez*, we emphasized that it is the quality of the defendant's criminal history not the quantity which is decisive. *Id.*

In examining the quality of a defendant's criminal history, a district court may consider the defendant's repetition of the same or similar offenses, and may base its upward departure on this circumstance. In *United States v. Chavez–Botello*, 905 F.2d 279 (9th Cir.1990) we stated:

> "The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated." Since the similarity between the prior and current offenses is not considered when computing the criminal history category, departure for this reason is permissible.

*Id.* at 281 (quoting *United States v. De Luna–Trujillo*, 868 F.2d 122, 125 (5th Cir. 1989) (citation omitted)); *see also United States v. Montenegro–Rojo*, 908 F.2d 425, 429 (9th Cir.1990); *United States v. Merino*, 44 F.3d 749, 756 (9th Cir.1994).

■■■ We have not considered, however, whether a criminal history which reflects the repetition of the same or similar offenses may warrant an upward departure from category VI. Logically, if an upward departure is permissible at all, it should make no difference which category the district court departs from. But category VI is different from the other categories. Defendants are placed in category VI because they are the most intractable of all defendants. *Carrillo–Alvarez*, 3 F.3d at 318 n. 5. It is the very circumstance of their recidivism which puts them in this category. *Id.* Therefore, to depart upward from category VI requires that the defendant's conduct be significantly more serious than that of other defendants in the same category. *Id.*

Segura-Del Real's seventeen prior convictions included convictions for auto theft, attempted auto theft, three petty thefts, and first and second-degree burglary. His convictions also included three illegal entries into the United States during which he was assisting other illegal aliens to enter this country, reentry as a deported alien, and four convictions of aiding and abetting the illegal entry of other aliens. The district court appropriately focused on Segura–Del Real's repetitive immigration violations. As to these violations, his criminal history demonstrated a total lack of recognition of the gravity of such offenses and his propensity to continue to commit them.

We conclude Segura–Del Real's numerous and repetitive immigration violations warranted an upward departure from category VI of the Sentencing Guidelines.[1]

## C. Extent of Departure

■ Segura-Del Real next argues that the extent of the district court's upward departure is unreasonable, because the court failed to provide a statement of reasons justifying the departure. *See United States v. Hines,* 26 F.3d 1469, 1478 (9th Cir.1994). We disagree.

At the sentencing hearing, Segura–Del Real suggested that if the court did depart upward, an appropriate sentence would be 45–58 months. The rationale provided by Segura–Del Real was that if his category VI criminal history category were extended out, a defendant with 25 [2] criminal history points would be in theoretical criminal history category X, with a corresponding sentence range of 45–48 months. The district court used this suggested methodology, but sentenced Segura–Del Real to 41 months in prison. Having suggested the methodology for the

district court to follow in determining the extent of its departure, Segura–Del Real cannot now complain the district court erred by employing such a methodology. To hold otherwise would be to permit a defendant to invite the court to err and then complain of the error the defendant suggested. *See United States v. Frank,* 36 F.3d 898, 903 (9th Cir.1994).

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

The majority holds that an offender in the highest listed criminal history category—an offender who has committed a large number of offenses and who can expect a severe punishment under the Guidelines—may have his Guidelines punishment increased even further solely because his most recent offense is similar to some of his earlier ones. The majority appears to conclude that if a Category VI offender's latest offense is similar to one or more of his past offenses, he is not only more likely, but *significantly* more likely to commit future criminal offenses than other Category VI offenders who may have committed a greater number of offenses, perhaps of a more serious nature, but whose offenses are more varied in nature. That conclusion makes little if any sense. Although an argument can be made that in some cases a similarity of offenses may suggest a greater likelihood of recidivism *when the persons being compared have each committed a relatively small number of crimes,* the argument has no force whatsoever in the case of generally comparable offenders who are already recidivists and who have already repeatedly relapsed into criminal conduct of all types. For this reason, and because the Guidelines clearly mandate a result contrary to that reached by the majority, I must dis-

---

**1.** Sentencing Guideline § 2L2.1, application note 2, provides in pertinent part: "[i]n the case of a defendant with repeated prior instances of deportation without criminal conviction, a sentence at or near the maximum of the applicable guideline range may be warranted." U.S.S.G. § 2L2.1 application note 2 (1994). Segura–Del Real argues this language precludes an upward departure for his repeated immigration violations. This argument is meritless. The language expressly addresses repeated prior instances of deportation without criminal conviction. The lan-

guage does not prohibit upward departure for repetitive criminal conduct. *Cf. Montenegro–Rojo,* 908 F.2d at 430 n. 7 ("[T]his statement does not explicitly forbid departing when the number of returns becomes very large.").

**2.** At the hearing, defense counsel mistakenly stated that Segura–Del Real had 25 criminal history points. However, Segura–Del Real would be in theoretical category X with 25 or 26 criminal history points.

sent from my colleagues' decision to uphold a significant increase in punishment simply because the defendant has committed several immigration violations rather than an equal or greater number of diverse but more serious offenses.

The majority's reasoning is particularly troubling in light of the general rule governing upward departures and the particular rule governing upward departures for Category VI offenders. Under those rules, a departure is unwarranted in this case because the defendant's conduct is clearly no more egregious than that of other offenders in Category VI and because he is clearly no more likely to commit another crime than other Category VI defendants. To put it in terms of the precedent that binds us, Segura's is not the extremely unusual case that warrants the "occasional" departure permitted for the most egregious of Category VI offenders. He simply made the mistake of committing a number of violations of the immigration laws.

We have previously stated that "an upward departure under § 4A1.3 is warranted only 'when the criminal history category *significantly under-represents* the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.'" *United States v. Carrillo–Alvarez,* 3 F.3d 316, 320 (9th Cir.1993)(quoting U.S.S.G. § 4A1.3, Policy Statement). Such departures are reserved for the "unusual" case. *Id.* "[S]ince the Guidelines have already accounted for criminal history, a court should depart based on inadequate criminal history only in those limited cases when a defendant's record is '*significantly more serious*' than that of other defendants in the same criminal history category." *United States v. Singleton,* 917 F.2d 411, 412 (9th Cir.1990); *United States v. Gayou,* 901 F.2d 746, 748 (9th Cir.1990). Moreover, because

"defendants in category VI are by definition the most intractable of all offenders," *Carrillo–Alvarez,* 3 F.3d at 320, upward departures from that criminal history category are extremely unusual.[1] The Guidelines, which provide specific instructions concerning upward departures from Category VI, state that a district court may, "on occasion," find the guideline range for Criminal History Category VI inadequate to reflect the seriousness of the defendant's criminal history and depart upward, but only in cases involving "*egregious, serious* criminal record[s]." U.S.S.G. § 4A1.3 (emphasis added); *see Carrillo–Alvarez,* 3 F.3d at 320. Accordingly, we have been reluctant to sanction a departure from Category VI unless the defendant, "among all those in that criminal history category, has a criminal record *so serious, so egregious,* that a departure is warranted." *Carrillo–Alvarez,* 3 F.3d at 320.

That Segura's record is not so serious, so egregious, that a departure from Category VI is warranted is made clear by our decisions in *Singleton* and *United States v. George,* 56 F.3d 1078, 1085 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995). In *Singleton,* we found the district court's determination that an upward departure from Category VI was "just barely" warranted in the case of a defendant whose extensive criminal history escalated in seriousness and included serious felonies, violent conduct, and firearms violations. 917 F.2d at 413. We stated that

> [w]ere it not for the *density* of Singleton's string of offenses (ten between his eighteenth birthday in 1982 and his assault on the officer in 1988), and were it not for their *escalating nature,* we would find it necessary to vacate the sentence to the extent that it was based upon the inadequacy of the criminal history category.

1. The Sentencing Commission designed §§ 4A1.1 and 4A1.3, which deal with criminal history categories and with the adequacy of those categories, to be "consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior." U.S.S.G. 4A, Introductory Commentary. The Commission included a defendant's past criminal record among the factors correlating with the likelihood of recidivism because "[r]epeated criminal behavior

is an indicator of a limited likelihood of successful rehabilitation." *Id.* Accordingly, defendants in Category VI, the highest criminal history category, are, not surprisingly, the defendants who demonstrate the most limited likelihood of successful rehabilitation and the greatest likelihood of recidivism. *See* U.S.S.G. § 4A1.3, Policy Statement (stating that Criminal History Category I includes "the first offender with the lowest risk of recidivism").

*Id.* (emphasis added). *See United States v. Durham,* 941 F.2d 858, 863 (9th Cir.1991)(affirming departure where district court cited defendant's "extensive criminal history, his continued involvement in crime, and the *increased violence* of those crimes as evidence that [the defendant's] criminal history category did not reflect his propensity to commit crime") (emphasis added).

In *George,* we found that the district court lacked the authority to depart from Category VI for a defendant who had nineteen convictions over the course of approximately seventeen years. The district court thoroughly explained the basis for its departure. It noted that George's string of convictions was "uninterrupted even during periods of incarceration, during which he committed drug and escape offenses." *Id.* It further noted that "the periods during which George was free from custody were short-lived, invariably ending in convictions on new felony offenses," that there was no evidence that he "had made any progress toward rehabilitation," that he lacked respect for the law and presented an extremely high likelihood of recidivism, and that he "received no criminal history points for three prior felony convictions." *Id.*

Nonetheless, we reversed, finding it unclear that George's "criminal record [wa]s 'significantly more serious' than that of other offenders in Category VI." *Id.* at 1085–86. We stated that George's record of convictions, unlike Singleton's, had not "escalated in seriousness" over the years; his most serious offenses had been committed between 1975 and 1977, and his subsequent offenses had not involved violence. 56 F.3d at 1086. We therefore concluded:

> If the record of the defendant in *Singleton* of offenses accelerating in seriousness from criminal mischief to serious felonies involving assaultive behavior "just barely" justified departure, it is not at all clear that George's record up to the instant offense would justify such a departure.

*Id.*

I can only conclude, on the basis of these cases, that Segura's record, which the district court acknowledged consisted of mainly minor offenses, cannot by any stretch of legal reasoning be said to justify an upward departure from Category VI. If the criminal conduct of Singleton, who had a dense concentration of offenses escalating to serious felonies involving violent criminal behavior, "just barely" warranted a departure, and if the criminal conduct of George, who had a completely uninterrupted string of felony convictions over the course of seventeen years, showed no sign of rehabilitation or respect for the law, and presented an extremely high likelihood of recidivism, did not warrant a departure, the mere fact that Segura's record of mainly minor offenses includes a number of *immigration violations* surely cannot warrant one. Segura's record is clearly no more extensive than George's, and certainly his offenses, like George's, have not escalated in seriousness and violence. Because Singleton's record just barely justified a departure, because George's record, *which is more serious than Segura's,* did not, and because Segura's record is without question not *significantly more serious* than that of other defendants in Category VI, it is crystal-clear to me that the district court lacked the authority to depart. Put another way, it would test one's rational powers to suggest that *among all the defendants in Category VI,* defendants whom the majority recognizes to be the most incorrigible in the federal system, *ante* at 277, Segura stands out as being one with a record *so egregious* and *so serious, see Carrillo–Alvarez,* 3 F.3d at 320, that a departure is warranted—regardless of the fact that several of the offenses he committed were immigration offenses.

Apparently recognizing that Segura's criminal record places him well within the normal range of Category VI offenders, the majority attempts to escape the rule that a departure may not be imposed in such circumstances by invoking the similarity-of-offense approach to which I have referred. While similarity of offenses *may* in some cases justify an upward departure to a higher category if the defendant is in one of the lower criminal history categories, it cannot rationally justify such a departure when the defendant is in Category VI, the highest listed category. In a few instances, we have said that defendants who have relapsed on one or more occasions into the same or a similar type of criminal behavior may pose a greater likelihood of recidivism than defendants who have com-

mitted a few dissimilar and unrelated offenses, and have allowed an upward departure for that reason. *See United States v. Chavez–Botello,* 905 F.2d 279, 281 (9th Cir. 1990) (five offenses); *United States v. Montenegro–Rojo,* 908 F.2d 425, 427 n. 1 (9th Cir.1990) (two offenses). The rationale employed in those few cases is applicable, however, only when the defendant and those with whom his conduct is being compared are individuals with minor criminal records that place them in the lower criminal history categories—that is, only in the case of defendants who have *not* regularly or frequently engaged in criminal conduct. Similarity of offense is a relevant predictor of future criminal conduct, if at all, only in the case of those who are not already demonstrated recidivists, who are not already in the *highest* listed criminal history category. For that reason, we have never previously upheld an upward departure in a Category VI case on the ground advanced by the majority; rather, our departures from Category VI have always been reserved for the most egregious of criminal offenders.

In Category VI, all of the defendants have repeatedly engaged in criminal conduct over the course of a number of years. There is no significant difference in the likelihood of recidivism between a defendant who has committed a large number of crimes of various types and another defendant who has committed a large number of crimes of the same or a similar type. Accordingly, in determining which Category VI defendants deserve extraordinary punishment, we have always looked to the egregiousness of their conduct, not to the wholly irrelevant question of whether the offenses they have committed were similar in nature.

The majority concludes that a defendant like Segura who has committed seventeen offenses, several of which are similar in nature, is *significantly* more likely to commit further crimes than a defendant like George who, over virtually the same period of time, has committed nineteen different offenses, a number of which are more serious and more violent than those committed by Segura. The majority reaches this conclusion, and thus justifies the added punishment imposed by the district court, notwithstanding the fact that both defendants unquestionably pose a

similar high risk of further recidivist conduct. The difference between the two, the majority declares, is that Segura has committed a number of immigration offenses. To me, that is an obvious and complete *non sequitur.* In fact, I see no possible justification whatsoever for an upward departure from Category VI in this case. The majority's holding is clearly unprecedented and contrary to our prior law.

While there are rare cases when a departure from Category VI is permissible, this is plainly not one of them. Here, we are confronted with a defendant who has committed a number of immigration violations, but whose criminal record has not escalated in seriousness or violence, and, in fact, whose record is essentially non-violent. Immigration offenses may not be popular these days, but compared to other more violent crimes, they are clearly not the most egregious. Yet the majority singles Segura's case out as the "unusual" one that warrants added punishment. Because Segura's immigration violations unquestionably do not render his conduct more egregious than that of other defendants in the same criminal history category and because those offenses do not in any way suggest a significantly greater likelihood of recidivism, I must respectfully dissent.