**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          v.

LARON KEVIN KORTGAARD,
                    *Defendant-Appellant.*

No. 03-10421

D.C. No.
CR-02-00099-ACK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted November 3, 2004
Submission Withdrawn January 11, 2005
Resubmitted August 30, 2005
Honolulu, Hawaii

Filed September 21, 2005

Before: Melvin Brunetti, Susan P. Graber, and Jay S. Bybee,
Circuit Judges.

Opinion by Judge Brunetti

**COUNSEL**

David F. Klein, Esq., Honolulu, Hawaii, for the defendant-appellant.

Michael K. Kawahara, Assistant United States Attorney, Honolulu, Hawaii, for the plaintiff-appellee.

**OPINION**

BRUNETTI, Circuit Judge:

Laron Kevin Kortgaard appeals his conviction and sentence for manufacturing marijuana. We have jurisdiction under 28 U.S.C. § 1291. We affirmed Kortgaard's conviction in an unpublished Memorandum and deferred submission of the sentencing issues. *United States v. Kortgaard*, 119 Fed. Appx. 148 (9th Cir. Jan. 11, 2005). We now hold that upward departures under § 4A1.3 of the United States Sentencing Guidelines involve factual findings beyond the fact of a prior conviction. Because Kortgaard's sentence was increased under § 4A1.3 and exceeds the maximum authorized sentence based solely on the jury's verdict under the then-mandatory Sentencing Guidelines, we vacate the sentence and remand for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005).

**Factual and Procedural History**

Kortgaard was originally charged with manufacturing marijuana based on his cultivation of 50 or more plants and pos-

session with intent to distribute the same amount. A jury acquitted Kortgaard of possession with intent to distribute but convicted him of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Based on the jury verdict and Kortgaard's criminal history, the Guidelines required the district court to sentence Kortgaard to not less than 21 months but not more than 27 months in prison.

Rather than sentence Kortgaard within this "base" sentencing range, the district court departed upward to a range of 37 to 46 months and ultimately sentenced Kortgaard to 46 months in prison.[1] The upward departure was based on the judge's finding that the applicable guideline range inadequately represented the seriousness of Kortgaard's criminal history and his likelihood of recidivism. U.S. Sentencing Guidelines Manual § 4A1.3 (Nov. 2001) (amended 2003) (hereinafter U.S.S.G.).[2] In making this finding, the district court considered Kortgaard's two drug convictions and eight convictions for various other offenses, which occurred in the United States many years ago, and Kortgaard's six foreign drug convictions and seven foreign convictions for property offenses, which occurred in Canada.

As the district court noted, U.S.S.G. § 4A1.2(e) and (h) preclude consideration of these old domestic convictions and foreign convictions in determining the applicable criminal history category and the "base" sentencing range. Nevertheless, the district court could and did consider those convictions in making an upward departure. Section 4A1.3 expressly permits consideration of "prior sentence(s) not used in com-

---

[1]The district court also sentenced Kortgaard to a consecutive 46-month term for violation of supervised release based on the present conviction. Kortgaard was on supervised release from a 1994 heroin conviction at the time he committed the instant offense.

[2]All citations to the U.S. Sentencing Guidelines in this opinion are to the version incorporating amendments effective November 1, 2001, unless otherwise indicated.

puting the criminal history category (*e.g.*, sentences for foreign and tribal offenses),” as well as other uncounted factors, including even criminal conduct not resulting in a conviction.

On appeal, Kortgaard maintains that the district court’s findings and the resulting upward departure are erroneous on the merits and, alternatively, violate the Sixth Amendment. At the time of briefing, the Supreme Court had decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), but had only granted certiorari in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). By the time of oral argument, however, the parties had the additional benefit of the Court’s decision in *Blakely* and its grant of certiorari in *Booker*. Kortgaard subsequently filed a motion for supplemental briefing in light of *Booker*, which the Government opposed. In an unpublished order filed August 30, 2005, we denied the motion. The Court’s guidance in *Booker* and the parties’ briefing and oral arguments are sufficiently illuminating to permit resolution of this appeal without supplemental briefing.

## Discussion

In *United States v. Bad Marriage*, 392 F.3d 1103, 1108 (9th Cir. 2004), decided only weeks before *Booker*, we reserved decision on the issue of “whether, or how, *Blakely* affects upward departures under § 4A1.3.” We now confront that issue in light of *Booker* and hold that upward departure decisions under § 4A1.3 are factual in nature; therefore, such decisions are not within *Apprendi*’s exception for the fact of a prior conviction and are subject to the restrictions of *Booker*.

### A.

**[1]** The Court clearly stated in *Booker*: “Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable

doubt." 125 S. Ct. at 756 (Stevens, J., opinion of the Court). As we have interpreted *Booker*, "the Sixth Amendment precludes a judge from enhancing a sentence based on extra-verdict findings (other than the fact of a prior conviction) in a mandatory sentencing regime." *United States v. Ameline*, 409 F.3d 1073, 1077 (9th Cir. 2005) (en banc) (citing *Booker*, 125 S. Ct. at 748-49).

**[2]** Kortgaard was sentenced under a mandatory sentencing regime. Although the Court ultimately declared the Sentencing Guidelines to be "advisory" going forward, *Booker*, 125 S. Ct. at 757 (Breyer, J., opinion of the Court), for purposes of the Sixth Amendment analysis under *Booker* we consider the state of affairs at the time the defendant was sentenced. *See id.* at 751, 769 (with respect to defendant Booker, finding that a Sixth Amendment violation occurred under the mandatory Guidelines regime, and remanding for resentencing under an advisory regime); *Ameline*, 409 F.3d at 1078 (finding constitutional error in an enhancement "under the then-mandatory guidelines"). At the time Kortgaard was sentenced in 2003, pre-*Blakely* and pre-*Booker*, the Guidelines were "mandatory and binding on all judges" and therefore had "the force and effect of laws." *Booker*, 125 S. Ct. at 750 (Stevens, J., opinion of the Court). Moreover, there is no indication in the record that the district court here treated the Guidelines as anything other than mandatory and binding. *Cf. Ameline*, 409 F.3d at 1077 (stating that no Sixth Amendment violation occurs under *Booker* where a "particularly prescient sentencing judge, pre-*Booker*, had . . . made clear that he was treating the Guidelines as advisory rather than binding").

**[3]** It is inconsequential to our Sixth Amendment analysis that upward departures under § 4A1.3 are discretionary, insofar as "the court *may consider* imposing a sentence departing from the otherwise applicable guideline range" if certain prerequisite findings are made. U.S.S.G. § 4A1.3 (emphasis added). As noted above, at the time Kortgaard was sentenced, sentencing in accordance with the Guidelines was mandatory

and the district court here treated the Guidelines accordingly. In such cases, "the judge is bound to impose a sentence within the Guidelines range" supported by the jury's verdict, the upper limit of which represents the "maximum authorized" sentence. *Booker*, 125 S. Ct. at 750, 756 (Stevens, J., opinion of the Court). Although the judge has discretion to *consider* a departure under § 4A1.3, the judge does not have unfettered discretion to *impose* a departure; additional factual findings are prerequisite. *See* U.S.S.G. § 4A1.3. In the absence of such findings, the applicable Guideline range remains mandatory and the judge has no authority to impose, nor is the defendant eligible to receive, a greater sentence. "The judge acquires that authority only upon finding some additional fact." *Blakely*, 124 S. Ct. at 2538, *quoted in Booker*, 125 S. Ct. at 751 (Stevens, J., opinion of the Court). "Whether the judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence." *Blakely*, 124 S. Ct. at 2538 n.8. In other words, additional factual findings under § 4A1.3 are "necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict." *Booker*, 125 S. Ct. at 756 (Stevens, J., opinion of the Court). Therefore, to satisfy the Sixth Amendment, the additional facts (other than the fact of a prior conviction) "must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.*

**[4]** Under the mandatory Guidelines regime in effect at the time Kortgaard was sentenced, the "maximum authorized" sentence, or "the Guideline range supported by the jury verdict alone," was 21 to 27 months in prison. *Booker*, 125 S. Ct. at 751, 756 (Stevens, J., opinion of the Court); *see, e.g.*, *id.* at 751 (calculating Booker's maximum authorized sentence as 210 to 262 months under the Guidelines). Kortgaard's actual sentence, however, was 46 months, or 19 months longer than the maximum Guidelines term supported by the jury verdict alone. Consequently, if Kortgaard's sentence was based on facts, other than the fact of a prior conviction, not admitted by

Kortgaard or found by a jury beyond a reasonable doubt, then the sentence violates his Sixth Amendment right to a jury trial. *See id.* at 756.

## B.

Kortgaard contends that the district court's decision to depart upward under § 4A1.3 without submitting the issue to a jury violates the Sixth Amendment because § 4A1.3 requires extra-verdict factual findings beyond the facts of Kortgaard's prior convictions and sentences. The Government essentially contends that Kortgaard's sentence is within *Apprendi*'s exception for the fact of a prior conviction because the sentencing judge's findings under § 4A1.3 followed as a matter of law from the fact of Kortgaard's prior convictions.

## 1.

The mere fact that the sentencing judge considered prior convictions in departing upward does not bring this case within the exception for "the fact of a prior conviction" that the Court carved out in *Apprendi*, 530 U.S. at 489-90 (deriving the exception from *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)). The fact of Kortgaard's prior convictions was not the ultimate finding upon which the court based the upward departure.

The 2001 version of § 4A1.3 provides in pertinent part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range. Such information may include, but is not limited to, information concerning:

(a) prior sentence(s) not used in computing the criminal history category (*e.g.*, sentences for foreign and tribal offenses);

(b) prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions;

(c) prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order;

(d) whether the defendant was pending trial or sentencing on another charge at the time of the instant offense;

(e) prior similar adult criminal conduct not resulting in a criminal conviction.

A departure under this provision is warranted when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

U.S.S.G. § 4A1.3.[3]

Uncounted prior offenses are clearly part of the inquiry under § 4A1.3, but that is only where the inquiry begins, not where it ends. The fact of prior offenses is merely one variable that a sentencing judge may consider in a larger calculus. The ultimate finding that must be made before departing

---

[3]The 2003 amendments to § 4A1.3 reorganized the upward and downward departure provisions and renumbered all subsections; however, the operative text of the core provisions—the "seriousness" and "likelihood" determination and the permissible factors—is practically identical. *Compare* U.S.S.G. § 4A1.3 (Nov. 2001), *with* U.S.S.G. § 4A1.3 (Nov. 2004).

upward under § 4A1.3 is that "the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." *Id.*; *see United States v. Connelly*, 156 F.3d 978, 983 (9th Cir. 1998); *United States v. Myers*, 41 F.3d 531, 534 (9th Cir. 1994). Accordingly, after considering Kortgaard's uncounted convictions, the district court stated its finding that criminal history category III "significantly under-represents the seriousness of [Kortgaard's] criminality and the risk of recidivism posed by him."

**2.**

**[5]** We also find that the ultimate § 4A1.3 determinations of the "seriousness" of a defendant's past misconduct and a defendant's "likelihood" of recidivism are factual matters. Contending instead that these determinations are issues of law following from the fact of a prior conviction, the Government analogizes § 4A1.3 determinations to decisions classifying an offense as a "violent felony." *See, e.g.*, *United States v. Smith*, 390 F.3d 661, 666 (9th Cir. 2004), *amended by* 405 F.3d 726 (9th Cir. 2005) (rejecting an *Apprendi* challenge to a sentencing enhancement under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e)); *see also United States v. Von Brown*, 417 F.3d 1077, 1079-80 (9th Cir. 2005) (per curiam) (following *Smith* and holding that the determination that a prior conviction is a "crime of violence" within U.S.S.G. § 4B1.2 is a legal question outside the purview of *Apprendi*, *Blakely*, and *Booker*). The analogy is not fitting.

Terms like "violent felony" and "crime of violence" are defined by statute and according to certain enumerated elements. *See, e.g.*, 18 U.S.C. § 924(e)(2)(B); U.S.S.G. § 4B1.2(a). Such determinations are essentially in-or-out, categorical classifications of individual offenses that follow necessarily from the elements of the conviction and jury-found or admitted facts; inquiry into the underlying facts of the conviction is otherwise prohibited. *See Von Brown*, 417 F.3d at

1079-80 & n.4; *Smith*, 390 F.3d at 663-64 (discussing the categorical and modified categorical approaches).

**[6]** By contrast, the Guidelines provide no statutory definition for "seriousness" and "likelihood," let alone a definition relying on the elements of the offense. *Cf.* U.S.S.G. § 4B1.2(a) (defining "crime of violence"). Section 4A1.3 is a policy statement. It authorizes the sentencing judge to exercise discretion, stating that the court "may consider" a departure, and it provides only examples of criminal histories that a sentencing judge "might" or "may" find sufficient depending on the facts of a particular case. U.S.S.G. § 4A1.3; *see also id.* § 4A1.3, cmt. background ("This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur. . . . This policy statement authorizes the consideration of a departure . . . and provides guidance for the consideration of such departures.").

In applying the "seriousness" factor, we have observed that "it is the quality of the defendant's criminal history not the quantity which is decisive." *United States v. Segura-Del Real*, 83 F.3d 275, 277 (9th Cir. 1996). "An upward departure under § 4A1.3 may not be based on mechanical calculations. It must be justified, rather, by a qualitative difference between the defendant's overall record and that of other defendants in the same criminal history category." *United States v. Carrillo-Alvarez*, 3 F.3d 316, 322 (9th Cir. 1993). For example, in *Bad Marriage*, our analysis consisted of a comparative analysis and relativistic judgments about the seriousness of the defendant's various prior offenses and his record as a whole. 392 F.3d at 1111-12. We surmised that "Bad Marriage's record reveals an individual ravaged by substance abuse, not a depraved criminal" and concluded that "a departure was not justified under the facts of this case." *Id.* at 1112-13.

In assessing a defendant's "likelihood" of future recidivism, we have analyzed "1) the quantity (or 'repetitiveness')

of uncounted criminal conduct, 2) the similarity of uncounted criminal conduct to the offense conduct, and 3) the degree to which the defendant has been deterred by prior sentences." *Connelly*, 156 F.3d at 985. Although some of these factors look to objective facts (e.g., number of offenses), this test clearly calls for comparative and qualitative assessments of a defendant's overall criminal record and pattern of criminality, often including some judgments regarding the defendant's motives, morality, or state of mind. *See, e.g.*, *Bad Marriage*, 392 F.3d at 1113 ("By far, the bulk of Bad Marriage's criminal history consists of minor offenses, involving no threat to human beings, committed while the defendant was intoxicated."); *Connelly*, 156 F.3d at 985 (finding that the defendant's convictions for unauthorized use of a credit card and credit card fraud were "strikingly similar" and "involve stealing from people who trusted him"); *Segura-Del Real*, 83 F.3d at 278 (finding that the defendant's "criminal history demonstrated a total lack of recognition of the gravity of such offenses and his propensity to continue to commit them"). Moreover, the ultimate assessment of "the likelihood that the defendant will commit other crimes" is quite literally an estimate of the probability of a person's future actions— basically, a prediction of the future. The fact that such predictions may be accurate, reliable, or based on objective information simply does not change the nature of the inquiry.

**[7]** We find that these inquiries are fundamentally factual in nature. On the whole, applying § 4A1.3 requires an exercise of discretion, qualitative and relativistic assessments of the nature of a defendant's overall record and pattern of criminality, and estimations of a defendant's propensity towards future recidivism. These determinations do not follow necessarily from the fact of any prior conviction or sentence but instead call for the judgment of a factfinder.

Our conclusion is consistent with our prior characterization and treatment of the "serious[ness]" and "likelihood" findings under § 4A1.3 as "factual findings." *Myers*, 41 F.3d at 534. In

*Myers*, we treated the district court's authority to consider a particular class of conduct (post-offense misconduct) as an issue of law; however, we treated the district court's findings that the misconduct was sufficiently serious and indicated a strong likelihood of future recidivism as "factual findings" and reviewed for clear error. *Id.* at 533-34.[4]

Moreover, the Supreme Court has characterized upward departure determinations in general as "factual matters." *Koon*, 518 U.S. at 100. In rejecting the Government's characterization of such determinations as questions of law, the Court stated:

> The Government seeks to avoid the factual nature of the departure inquiry by describing it at a higher level of generality linked closely to questions of law. The relevant question, however, is not, as the Government says, "whether a particular factor is within the 'heartland'" as a general proposition, but whether the particular factor is within the heartland given all the facts of the case. . . . What the district court must determine is whether the misconduct that

---

[4]Our prior classifications of issues as ones of fact or law are instructive even though the standards of review we once employed have since changed. *Myers* applied the three-part test of *United States v. Lira-Barraza*, 941 F.2d 745, 746-47 (9th Cir. 1991) (en banc), which prescribed a different standard of review (*de novo*, clear error, and reasonableness) for each of the three inquiries (legal authority to depart, factual findings justifying departure, and degree of departure, respectively). As we recognized in *United States v. Beasley*, 90 F.3d 400, 402-03 (9th Cir. 1996), *Lira-Barraza* was effectively overruled by *Koon v. United States*, 518 U.S. 81, 91 (1996), wherein the Court held that upward departures were to be reviewed for abuse of discretion only. Congress then amended 18 U.S.C. § 3742(e) to provide for *de novo* review of certain sentencing decisions. PROTECT Act, Pub. L. No. 108-21, § 401, 117 Stat. 650, 670 (2003); *United States v. Daychild*, 357 F.3d 1082, 1104-06 (9th Cir. 2004). Finally, in *Booker*, the Court excised § 3742(e) in fashioning a remedy to the unconstitutionality of the Sentencing Guidelines. *Booker*, 125 U.S. at 764 (Breyer, J., opinion of the Court).

occurred in the particular instance suffices to make the case atypical. The answer is apt to vary depending on, for instance, the severity of the misconduct, its timing, and the disruption it causes. These considerations are factual matters.

*Id.* at 99-100 (citation omitted). This factual "heartland" analysis is the basis for upward departures generally, including those under § 4A1.3. *See Connelly*, 156 F.3d at 983 (describing both the generally applicable upward departure analysis and the § 4A1.3 inquiry).

**3.**

[8] We are also guided by our decision in *United States v. Tighe*, wherein we stated that the prior conviction exception "should remain a 'narrow exception' to *Apprendi*." 266 F.3d 1187, 1194 (9th Cir. 2001) (quoting *Apprendi*, 530 U.S. at 490). As we noted in *Tighe*, the *Apprendi* Court derived the prior conviction exception from *Almendarez-Torres*; however, the Court also questioned the continuing validity of *Almendarez-Torres* regarding the consideration of recidivism in sentencing, construed it as "represent[ing] at best an exceptional departure from the historic practice that we have described," and therefore decided "to treat the case as a narrow exception to the general rule." *Apprendi*, 530 U.S. at 487, 489-90. We treated it accordingly in *Tighe* and declined "to extend *Apprendi*'s 'prior conviction' exception to include prior nonjury juvenile adjudications on the basis of *Almendarez-Torres*' logic." *Tighe*, 266 F.3d at 1194.

We are faced here with another request to extend or broadly construe *Apprendi*'s exception in order to include within it issues that have not been submitted to a jury. We once again decline to do so and continue to treat the exception as "a narrow exception to the general rule." *Apprendi*, 530 U.S. at 489-90; *cf. Smith*, 390 F.3d at 666 (holding that for purposes of ACCA enhancements the modified categorical approach is

within the *Apprendi* exception so long as there is no inquiry into the underlying facts of the conviction).

**[9]** *Apprendi* stated the exception as covering "*the fact of a prior conviction,*" not facts that are derived or inferred therefrom. 530 U.S. at 490 (emphasis added); *see also id.* at 488 ("any 'fact' of prior conviction"). While the Court repeated the "prior conviction" exception in both *Blakely* and *Booker*, in neither case did the Court have the occasion to redefine or expand its scope. *Booker*, 125 S. Ct. at 746-47, 756 ("reaffirm[ing]" *Apprendi*, and treating findings regarding drug quantity, obstruction of justice, and level of participation as factual); *Blakely*, 124 S. Ct. at 2536, 2537 (quoting *Apprendi*, and treating a finding of "deliberate cruelty" as factual). Even if the prior conviction exception legitimately includes facts that follow necessarily or as a matter of law from the fact of a prior conviction, we have already concluded that the findings required to support an upward departure under § 4A1.3 are not of that nature because they require the judgment of a factfinder.

## C.

Because our holding today applies to upward departures under § 4A1.3 generally, we need not reach Kortgaard's argument under *Tighe* that the sentencing judge's consideration of Kortgaard's Canadian convictions violates the Sixth Amendment. We express no opinion as to whether Canadian convictions or other foreign convictions, like nonjury juvenile adjudications, lack the requisite due process protections to qualify for *Apprendi*'s exception for the fact of a prior conviction. *Cf. Tighe*, 266 F.3d at 1194.

We also express no opinion with respect to whether the district court's decision to depart upward pursuant to § 4A1.3 constitutes "plain error" within the meaning of *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). Even if Kortgaard failed to preserve the error below, the government

nonetheless elected to address the merits of Kortgaard's challenge to the upward departure under § 4A1.3 without raising the issue of waiver. In these circumstances, we conclude that the government has " 'waived' any waiver argument it may have had." *United States v. Doe*, 53 F.3d 1081, 1082-83 (9th Cir. 1995) (holding that the government had waived its waiver argument by failing to assert it and instead addressing the merits of the defendant's claim); *see also United States v. Booker*, 375 F.3d 508, 515 (7th Cir. 2004) (not considering the application of the plain error doctrine because the Government did not argue that Booker forfeited his Sixth Amendment challenge), *aff'd*, 125 S. Ct. at 769 (also not applying the plain error doctrine). Accordingly, we treat Kortgaard's claim of Sixth Amendment error as preserved.

## Conclusion

**[10]** For the foregoing reasons, we hold that upward departures under § 4A1.3 of the Sentencing Guidelines involve factual findings beyond the fact of a prior conviction and are not within *Apprendi*'s exception for the fact of a prior conviction. Kortgaard was sentenced under a mandatory sentencing regime, the district judge departed upward under § 4A1.3 based on judicially determined facts, and the actual sentence exceeds the maximum authorized at the time based solely on the jury's verdict. Kortgaard's sentence therefore violates the Sixth Amendment, *Booker*, 125 S. Ct. at 756 (Stevens, J., opinion of the Court), and "is invalid," *Blakely*, 124 S. Ct. at 2538. We therefore vacate the sentence and remand for resentencing under the now-advisory Guidelines regime. *See Booker*, 125 S. Ct. at 769 (Breyer, J., opinion of the Court).

**SENTENCE VACATED AND REMANDED.**