**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ADALBERTO MURGUIA-RODRIGUEZ,
AKA Adalberto Rodriguez-Murguia,
*Defendant-Appellant*.

No. 14-10400

D.C. No.
4:14-cr-00444-
CKJ-BGM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
August 11, 2015—San Francisco, California

Filed March 1, 2016

Before: Stephen Reinhardt, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Callahan

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a conviction, vacated a sentence, and remanded for resentencing in a case in which the district court took the defendant's statement that the sentencing proceeding could proceed in English as a waiver of his right to have an interpreter during that proceeding.

The panel held that the defendant did not validly waive his right to an interpreter, and that the district court dismissed his court-appointed interpreter without complying with the procedural requirements of 28 U.S.C. § 1827(f)(1), depriving the defendant of his right to an interpreter in violation of the Court Interpreters Act. The panel declined to exercise its discretion to consider whether the district court's error was harmless.

The panel affirmed the conviction for reasons discussed in a concurrently filed memorandum disposition.

Dissenting, Judge Callahan wrote that the defendant failed to object to any error at his sentencing and appeal, and that the majority absolves the defendant of his burden to show prejudice, granting relief that he doesn't seek.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Daniel L. Kaplan (argued), Assistant Federal Public Defender, and John M. Sands, Federal Public Defender, Phoenix, Arizona, for the Defendant-Appellant.

Carmen F. Corbin (argued), Assistant United States Attorney; John S. Leonardo, United States Attorney; Robert L. Miskell, Appellate Chief, United States Attorneys' Office, Tucson, Arizona, for Plaintiff-Appellee.

**OPINION**

REINHARDT, Circuit Judge:

The Court Interpreters Act protects the rights of federal litigants with limited English proficiency by requiring that courts utilize the services of certified interpreters in proceedings instituted by the United States when the failure to do so would inhibit the party's ability to participate fully in the proceedings. The Act also provides procedural safeguards to ensure that any waiver of this right is done knowingly, intelligently, and voluntarily. Prior to his trial, Defendant Adalberto Murguia-Rodriguez stipulated that law enforcement officers found marijuana in the truck he had been driving. At trial, with the assistance of an interpreter, he explained that he had borrowed the vehicle and did not know that there was marijuana inside. He was convicted of possession with the intent to distribute marijuana. He was then sentenced to 55 months in custody. He did not, however, have an interpreter at the sentencing proceeding, because the district court took his statement that the

sentencing proceeding could proceed "in English" as a waiver of his right to have an interpreter during that proceeding.

On appeal, Murguia-Rodriguez challenges his conviction, arguing that the district court erred by failing to ensure that his stipulation was knowing and voluntary. He also contends that the district court erred at sentencing by, among other things, dismissing his court-appointed interpreter contrary to the provisions of the Court Interpreters Act. In a memorandum disposition filed concurrently, we hold that the district court did not err in concluding that Murguia-Rodriguez entered into his trial stipulation knowingly and voluntarily. In this opinion, however, we hold that the district court dismissed Murguia-Rodriguez's interpreter without adhering to the procedures required by the Court Interpreters Act. Accordingly, we affirm Murguia-Rodriguez's conviction, vacate his sentence, and remand for a new sentencing hearing.

## I. BACKGROUND

Interpreters play an important role in protecting the rights of non-English speaking persons. Over 60 million people in the United States speak a language other than English at home. U.S. Census Bureau, *Language Use in the United States: 2011* at 3 (Aug. 2013).[1] Of that number, 15.4% speak English "not well" and 7% (over 4 million) speak English "not at all." *Id.* Effective language assistance is necessary to ensure that these individuals have meaningful access to government entities and programs. *See* Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting

---

[1] *Available at*: https://www.census.gov/prod/2013pubs/acs-22.pdf.

Limited English Proficient Persons, 67 Fed. Reg. 41455, 41457 (June 18, 2002). Such assistance is of particular importance in the courtroom where individuals must communicate in "precise language" under stressful conditions and key determinations affecting the individual's personal liberty or financial well-being are often "made based on credibility." *Id.* at 41471. This is especially so in criminal proceedings.

The Court Interpreter's Act of 1978 was designed to accommodate individuals with limited English proficiency and to ensure that they could fully "understand and participate in their own defense." H.R. Rep. 95-1687 at 4 (1978). The Act requires that a certified interpreter be utilized in proceedings instituted by the United States when a party "speaks only or primarily a language other than the English language . . . [thus] inhibit[ing] such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer[.]" 28 U.S.C. § 1827(d)(1).[2] The Act also restricts the party's ability to waive his right to an interpreter. A party may waive that statutory right if, and "only if," (1) the waiver is made "expressly on the record" by the party, (2) "after opportunity to consult with counsel," (3) the presiding judge has explained to the party "the nature and effect of the waiver," and (4) the waiver is approved by the presiding judge. 28 U.S.C. § 1827(f)(1).[3]

---

[2]   The law also requires use of an interpreter for hearing-impaired individuals.

[3]   As to condition (3), the explanation of the nature and effect of the waiver must be made through "the services of the most available certified interpreter, or when no certified interpreter is reasonably available . . . the

Murguia-Rodriguez was charged with (1) the knowing and intentional possession with the intent to distribute marijuana and (2) the knowing possession of ammunition as a previously convicted felon. Murguia-Rodriguez, a legal permanent resident of this country for many years, could read English, but only understood spoken English "about 60 percent" of the time. The presiding magistrate judge determined at Murguia-Rodriguez's initial appearance that he required a Spanish-language interpreter, and one was appointed for him.

Before trial, Murguia-Rodriguez stipulated that (1) law enforcement officers found 60 kilograms of marijuana in the truck that he had been driving, (2) law enforcement officers also found 45 rounds of .32 caliber ammunition in that vehicle, and (3) he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. At trial, with the assistance of his court-appointed interpreter, Murguia-Rodriguez testified that he was unaware of the presence of the drugs and ammunition in the vehicle. The jury returned a mixed verdict. It convicted Murguia-Rodriguez of Count 1, and found that the offense involved 50 kilograms or more of marijuana. The jury acquitted Murguia-Rodriguez on Count 2, the possession of ammunition. Based on Murguia-Rodriguez's offense level and criminal history, the probation officer calculated a guidelines range of 51 to 63 months.

Murguia-Rodriguez filed a sentencing memorandum in which he urged the court to consider the "effect of [his]

---

services of an otherwise competent interpreter." 28 U.S.C. § 1827(f)(1). We need not consider the additional language because the judge made no explanation at all in this case.

imprisonment on third parties." He noted that he was in an 11-year common-law relationship with a woman named Belinda Angulo, with whom he had a 12-year-old son. He further noted that he helped raise Angulo's teenaged children, and that prior to his arrest, he "use[d] to take them and pick them up from school" and was "actively involved in their lives providing guidance and support." He concluded his sentencing memorandum with a request for 33 months of incarceration.

At the outset of his sentencing hearing, the district judge said to Murguia-Rodriguez: "[J]ust before the case was called the interpreter indicated that you had indicated you prefer to proceed in the English language this morning. Is that correct, sir?" Murguia-Rodrigez replied affirmatively. The judge then asked: "Do you want the interpreter to remain in case you have any difficulties, or is it okay with you if she leaves the courtroom?" To which Murguia-Rodriguez replied, "She can stay."

The judge then urged Murguia-Rodriguez to let the interpreter cease performing her duties, stating: "But do you need her—she has other duties. Do you need her to stay, or do you feel comfortable proceeding in English?" Murguia-Rodriguez answered "I am comfortable proceeding in English," and the judge promptly dismissed the interpreter.

Ultimately, the judge accepted the probation officer's guidelines calculation of 51 to 63 months. She sentenced Murguia-Rodriguez to 55 months of custody, followed by three years of supervised release. She entered judgment that same day, and Murguia-Rodriguez filed his notice of appeal three days later.

## II.  ANALYSIS

Murguia-Rodriguez challenges his sentence on three grounds:  (1) that the dismissal of his court interpreter violated the Court Interpreters Act, (2) that the district court erred procedurally by failing to address his non-frivolous argument in support of a below-Guidelines sentence, and (3) that the court should reconsider his sentence in light of recent retroactive amendments to the Sentencing Guidelines.  He also challenges his conviction on the ground that the district court failed to ensure that his guilt-phase stipulation was entered into knowingly and voluntarily, an argument that we address in the memorandum disposition filed concurrently with this opinion.

When a court becomes aware of a criminal defendant's potential difficulties in understanding or speaking the English language, it has a mandatory duty to make a determination on the record whether an interpreter is required, and if so, to appoint a certified individual.  *See, e.g.*, *United States v. Si*, 333 F.3d 1041, 1044 (9th Cir. 2003).  Any waiver of the right to a certified interpreter, whether before or after that determination, must comply with the express provisions of the Court Interpreters Act.  28 U.S.C. § 1827(f)(1).

At the outset, we note that this case is unlike the other Court Interpreters Act cases that we have previously encountered.  Those cases have typically come before us in one of two postures.  First, we have considered cases in which the defendant's need for an interpreter was overlooked by the district court and an interpreter was never appointed.  Rather than decide whether an interpreter was required for the first time on appeal, we have regularly remanded these cases to the district court to make an initial determination whether

the defendant should have been provided with an interpreter. *See, e.g.*, *Si*, 33 F.3d at 1043 n.4 & 1044; *Mayans*, 17 F.3d at 1179–81; *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986).

Second, we have encountered cases in which the defendant challenges the district court's explicit decision not to appoint an interpreter. *See, e.g.*, *Gonzalez v. United States*, 33 F.3d 1047, 1050 (9th Cir. 1994). In those cases, we review the district court's determination for clear error and make a determination on the merits. *Id.*

This case does not fall into either of the above categories. Here, the magistrate judge presiding over Murguia-Rodriguez's initial appearance determined that an interpreter was required, and one was appointed for him.[4] The district

---

[4]   Although very little was stated on the record about why Murguia-Rodriguez required an interpreter, this appears to be consistent with congressional intent. As the House Report on the Court Interpreters Act states, "[i]t is anticipated that the need for formal proceedings to make an initial determination of whether the appointment of an interpreter is required will be minimal." H.R. Rep. 95-1687, at 6 (1978). The procedures here may have been minimal, but the magistrate judge clearly determined that an interpreter was required. The dissent suggests that an interpreter may have been appointed in an abundance of caution, but that is irrelevant. There is sufficient evidence to support the finding that an interpreter was "required" because Murguia-Rodriguez could understand English only about "60 percent" of the time, which the judge could surely find "inhibit[ed]" his "comprehension of the proceedings or communication with counsel or the presiding judicial officer." 28 U.S.C. § 1827(d). The dissent also notes that Murguia-Rodriguez asked for a remand to determine whether he needed an interpreter at sentencing. Remand is the remedy we have granted in previous cases—cases in which the court failed to determine whether an interpreter was required and the case proceeded to a final decision without one. This case, however, is not about whether an interpreter should have been appointed, but about what

judge continued to use an interpreter throughout Murguia-Rodriguez's trial, and indeed, an interpreter was present in the courtroom ready to provide services to him at the sentencing hearing. After a colloquy with the defendant, the district judge appeared to conclude that the defendant was willing to have the hearing held without an interpreter, although she made no finding that the original appointment of an interpreter was erroneous or should be vacated.[5] The question in this case, therefore, is not whether Murguia-Rodriguez required an interpreter, but whether he validly waived his right to an interpreter. We conclude that he did not.

---

procedures the court must follow before finding a waiver. It presents a question of law which requires no factual development, and thus no remand is necessary.

[5] The dissent tries to scrape together pieces of Murguia-Rodriguez's testimony to suggest that a hypothetical judge might have determined that an interpreter was not needed, but the only finding of fact actually made in the proceedings was that an interpreter was "required." We typically review findings of fact for clear error, and do not substitute our own findings for the district court's. If, as the dissent suggests, an interpreter was no longer necessary at the sentencing hearing, the district court would have been required to find as much on the record. No such findings were made, and it appears that the district judge intended to proceed with an interpreter at the sentencing hearing until she erroneously concluded that Murguia-Rodriguez was willing to waive his right to one. Furthermore, contrary to the dissent's suggestion, Murguia-Rodriguez has not "conceded" that there was no fact-finding in this case regarding whether he required an interpreter. Rather, he suggested that the district court "might be entitled to deference" *if* its decision to dismiss the interpreter had been based on a finding that he could "understand the proceedings and express himself clearly without an interpreter. But the court made no such finding here[.]" Obviously, Murguia-Rodriguez's contention is not that there was no fact-finding as to whether he required an interpreter, but that there was no finding of fact that an interpreter was no longer required.

The Court Interpreters Act is unambiguous on the point at issue. A party may waive his right to utilize an interpreter "only if" the waiver has been made "expressly by [the party] on the record," "after opportunity to consult with counsel," and "after the presiding judicial officer has explained to such individual . . . the nature and effect of the waiver." 28 U.S.C. § 1827(f)(1). Then, and only then, may the presiding judicial officer approve a waiver.

Murguia-Rodriguez did not validly waive his right to an interpreter. To begin with, Murguia-Rodriguez never asked to dismiss his interpreter. Instead, he asked if *he* could proceed in English, and, when questioned by the district judge, he indicated that in case he had any difficulties, he wanted the interpreter to remain present. At no point, however, did Murguia-Rodriguez "expressly" state his desire to waive his right to the interpreter. He merely stated that he wanted to "proceed in English"—in other words, that he wished to make his allocution in English—perhaps in the hope that doing so would make the sentencing judge more sympathetic to him and to his argument. Murguia-Rodriguez's statement did not convey either expressly or implicitly a desire to no longer have an interpreter to help him comprehend the proceedings generally or to communicate with his lawyer specifically. That the defendant chose to make his sentencing statement in English does not signify in any way that he no longer needed or wanted help in comprehending statements made by the judge, including the court's pronouncement of his sentence, or by the prosecutor.

Moreover, rather than explain to Murguia-Rodriguez the nature and effect of his waiver, the judge indicated to him that she wished to dismiss the interpreter: "She has other duties. Do you need her to stay or are you comfortable proceeding in

English?" The requirement that judges explain the nature and effect of the waiver is not a hollow technical command. By explaining to defendants the nature and effect of any prospective waiver, a judge not only ensures that the waiver is knowing and voluntary, but also that the judge and the defendant have a shared understanding as to its scope. A waiver, after all, can come in many forms. A defendant may wish, for example, to waive all translation, or he may merely want to waive the right to a certified translator in favor of having a family member translate. By failing to comply with the procedural safeguards of 28 U.S.C. § 1827(f)(1), a judge unnecessarily risks misunderstanding the defendant's intentions, and therefore risks depriving him of an interpreter without his consent, as the judge did in this case.**[6]**

It goes without saying that in Murguia-Rodriguez's case not only did he not make a waiver "expressly on the record," but the district judge did not explain to him "the nature and effect of the waiver." Instead, she presented him with a false choice: whether he was "comfortable proceeding [with his allocution] in English" or having the interpreter remain and continue to perform her duties. Murguia-Rodriguez quite properly initially indicated that he preferred both, but the district judge erroneously refused to accept this answer and continued to press him to do one or the other. In the end, there was, of course, no waiver at all.

---

**[6]** The difference between the dissent's interpretation of the words "she can stay" (that she could stay *if she wants*), *see* Dissent Op. at 21 n.2, and our own (that he actually wanted her to stay) highlights this risk of potential misunderstanding—especially when dealing with individuals who have limited English proficiency.

In sum, we conclude that because the judge clearly erred in failing to comply with the procedural requirements of 28 U.S.C. § 1827(f)(1), Murguia-Rodriguez was deprived of his right to an interpreter in violation of the Court Interpreters Act.

Although the government failed to raise the issue of harmlessness in its brief, and thus waived that issue, the dissent asserts that we should hold that the deprivation of Murguia-Rodriguez's rights was harmless. As a general and consistent rule, "when the government fails to argue harmlessness, we deem the issue waived and do not consider the harmlessness of any errors we find." *United States v. Kloehn*, 620 F.3d 1122, 1130 (9th Cir. 2010) (quoting *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005)); *United States v. Varela-Rivera*, 279 F.3d 1174, 1180 (9th Cir. 2002); *United States v. Vallejo*, 237 F.3d 1008, 1026 (9th Cir. 2001). This is true even when the government "mentions" that harmless error applies in its brief but fails to advance a developed theory about how the errors were harmless, *Gonzalez-Flores*, 418 F.3d at 1100 n.4, as well as when the government makes no argument whatsoever as to harmlessness in its brief, *see United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc) ("[A]n appellee waives any argument it fails to raise in its answering brief.").

We have discretion to consider the issue of harmlessness *nostra sponte* in "extraordinary cases." *Gonzalez-Flores*, 418 F.3d at 1100–01. This case is not, however, an extraordinary one. The error committed by the district judge, although motivated by a concern for judicial efficiency, is precisely the type of error the statute was designed to prevent. The Court Interpreters Act seeks to protect the basic rights of litigants who are summoned into court by the United States and cannot

fully comprehend the proceedings. Moreover, sentencing is a critical part of the judicial process, especially in an era when the vast majority of convictions result from pleas rather than trials. Notwithstanding the sentencing guidelines, an individual's explanation to a judge as to why his sentence should be less than the judge may be considering plays an important role in the sentencing process. Conversely, the ability of the defendant to fully comprehend why the judge has chosen the sentence he has is essential to the proper functioning of the criminal justice system. The court's explanation of its reasons is intended to encourage the defendant and perhaps others to refrain from further unlawful conduct and to become law-abiding individuals following the period of incarceration. Further, resentencing will not require more than the expenditure of minimal judicial resources and provides a far better resolution of the issue than expanding the doctrine of harmlessness, which will only encourage the government's laxness and failure to follow this court's clear, applicable precedent. Finally, it would be exceedingly difficult in the ordinary case for a court to determine on appeal what effect the lack of an interpreter had on a defendant's ability to understand the entire course of the sentencing proceedings. *Cf. Gonzalez-Flores*, 418 F.3d at 1101. Accordingly, we will not exercise our discretion to consider whether the district court's error was harmless.

The dissent also suggests that the plain error doctrine applies to the issue before us because Murguia-Rodriguez failed to object to the district court's dismissal of the interpreter. Once again, the dissent relies on an issue not raised by the government. The United States has never once suggested that Murguia-Rodriguez did not preserve this issue or that the plain error doctrine is applicable to the question of the failure of the district court to follow the statutory

procedures. Indeed, the government consistently stated that *clear error* applies to that issue, even though it asserted that *plain error* applies to two of the three other errors that Muguia-Rodriguez raised on this appeal.[7] As we stated in *United States v. Kortgaard*, and as a number of other circuit courts have agreed, the government may waive the argument that an error was not objected to and was therefore forfeited. Without a forfeited error, plain error does not apply. *United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2005) (treating a potentially forfeited error as preserved because the government "elected to address the merits" without addressing whether the defendant had raised the issue below and declining to apply plain error because the government therefore "'waived' any waiver argument it may have had").[8] The First Circuit follows the same rule. It has held that when the government "fails to request plain error review, we, and many of our sister circuits, review the claim under the

---

[7] The government is correct to suggest that clear error is the appropriate standard to apply when reviewing a district court's determination whether an interpreter is required. *See Mayans*, 17 F.3d at 1179. Here, however, where the only question is whether the district court complied with the waiver provisions of 28 U.S.C. § 1827(f)—a question of law—there is a strong argument that the standard should be reviewed *de novo*. We need not decide this question, however, because the result would be the same under either standard. We can state unequivocally that we have a definite and firm conviction that the district court clearly erred by failing to follow the statutory procedures contained in 28 U.S.C. § 1827(f).

[8] This is not inconsistent with the dissent's point that the burden of showing prejudice under the plain error standard is on the defendant, not the government. *See United States v. Olano*, 507 U.S. 725, 734 (1993). The plain error doctrine applies only when an error has been forfeited, or in other words, not appropriately preserved by the defendant. *See* Fed. R. Crim. P. 51 & 52(b). If the error is not forfeited, or if the government has waived any contention that it is forfeited, the government has waived the waiver, and plain error does not apply.

standard of review that is applied when the issue is properly preserved below." *United States v. Encarnación-Ruiz*, 787 F.3d 581, 586 (1st Cir. 2015) (listing cases); *see also United States v. Paulino-Guzman*, 2015 WL 8284615, *2 n.5 (1st Cir. Dec. 9, 2015) (reiterating the rule). As the Sixth Circuit put it, "we will not apply the plain-error standard unless requested to do so by one of the parties." *United States v. Poulsen*, 655 F.3d 492, 502 n.1 (6th Cir. 2011). Finally, in a case that closely resembles ours, the Seventh Circuit stated, "when a party fails to raise an issue in the trial court, we generally review for plain error. However, the government asserts that in this case we review the district court's determinations . . . for clear error. It therefore has waived its right to rely on plain error review." *United States v. Salem*, 597 F.3d 877, 884 (7th Cir. 2010).[9]

---

[9]  The First, Sixth, and Seventh Circuits have explicitly held that a court may decline to apply plain error review when the government has failed to assert that the challenged error was forfeited. The Fifth and D.C. Circuits have indicated their approval of this holding. *See United States v. Jeffries*, 587 F.3d 690, 691 n.1 (5th Cir. 2009) (declining to apply plain error and noting that "[t]he Government does not seek plain error review"); *United States v. Cyr*, 29 F. App'x 1, 4 n.3 (D.C. Cir. 2001) (unpublished) ("[B]ecause the government does not argue for 'plain error' review, we consider only whether the error was 'clear.'"). A number of these circuits, moreover, recognize our circuit as applying this rule. *See, e.g.*, *Encarnación-Ruiz*, 787 F.3d at 586. Even the concurrence in *United States v. Williams*, which criticizes the majority's decision not to apply plain error, and questions the decisions by other circuits adopting that position, describes *Kortgaard* as: "holding that plain error is waivable because litigants can waive waiver arguments." 641 F.3d 758, 772 (6th Cir. 2011) (Thapar, District Judge, concurring). Our dissenting colleague cites no circuit cases to the contrary. Finally, while the dissent is correct to note that "[a] party's concession on the standard of review does not bind the court," Dissent Op. 27 (quoting *United States v. Bain*, 586 F.3d 634, 639 n.4 (8th Cir. 2009) (emphasis in original)), that is not inconsistent with our holding. "The 'waiver of waiver' doctrine" that we

Our rule, of course, is discretionary, and there may well be good reason to apply plain error in a particular case, even if the government has failed to assert that the error has not been preserved.  In this case, however, there is no such reason.  The government expressly chose to argue that plain error applied to two of the three other issues in Murguia-Rodriguez's appeal, but chose not to do so with respect to the district court's failure to follow the statutory commands. Moreover, many of the reasons why we decline to consider harmlessness apply with equal force to the plain error question raised *sua sponte* by the dissent.  We particularly see no reason to exercise our discretion in this sentencing case in which a remand for resentencing requires minimal expenditure of judicial and prosecutorial time and resources. Thus, without applying the plain error standard, but applying either clear error or de novo, we vacate Murguia-Rodriguez's sentence and remand for a new sentencing hearing.  Because this remedy obviates the need to address the other asserted sentencing errors, we do not consider them here.

### III. CONCLUSION

For the reasons discussed in the concurrently filed memorandum disposition, we affirm Murguia-Rodriguez's conviction.  We hold, however, that Murguia-Rodriguez was deprived of his right to an interpreter at sentencing in violation of the Court Interpreters Act.  Accordingly, we vacate Murguia-Rodriguez's sentence and remand for a new sentencing hearing at which Murguia-Rodriguez may utilize

---

apply here is "like waiver generally—a discretionary doctrine."  *See United States v. Macias*, 789 F.3d 1011, 1017 n.3 (9th Cir. 2015).  Thus, the court may exercise its discretion to apply plain error, and is not bound by any concession made by the government.

the services of a certified interpreter unless appropriately waived through the required procedures of the Court Interpreters Act or the presiding judge makes a proper determination on the record that an interpreter is no longer required.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED** for proceedings consistent with this opinion.

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority that interpreters play an important role in our criminal justice system. But the majority's opinion does not safeguard defendants, it punishes inarticulate district courts and rewards "gotcha" tactics. Murguia-Rodriguez was convicted of drug trafficking after a jury rejected his story that he "did not know" anything about the 130 pounds of marijuana in his truck as he was crossing the United States-Mexico border. After his full trial on the merits with an interpreter, Murguia-Rodriguez, a bilingual defendant, requested to proceed in English at his sentencing hearing. The district court granted his request and excused the interpreter. The court then listened to arguments from Murguia-Rodriguez's counsel, heard from Murguia-Rodriguez himself, and sentenced him to a middle-of-the-guidelines sentence.

Armed with new counsel on appeal, Murguia-Rodriguez claims that the district court erred by not explaining the nature and effect of his waiver of an interpreter prior to dismissing the interpreter. But while the district court may have erred, Murguia-Rodriguez failed to object to any error

at his sentencing and on appeal he fails to show prejudice. Our Supreme Court and Ninth Circuit precedent informs us that the correct standard of review is plain error review, and the record demonstrates that any error was not prejudicial under any standard. The majority sets the wrong standard of review, flouting relevant Supreme Court and Ninth Circuit precedent. They also ignore Murguia-Rodriguez's concessions on appeal and engage in improper appellate fact-finding. The majority thus absolves Murguia-Rodriguez of his burden to show prejudice and grants relief that he doesn't seek. I respectfully dissent.

## I. Background

Alberto Murguia-Rodriguez was born in Mexico but relocated to the United States when he was a young child. He has lived in Arizona, Wisconsin, California, and Nevada. He attended high school through at least the 11th grade in Tucson, Arizona, where he played football. He has been married and has several children. He has worked at a carwash, construction companies, and restaurants. He has owned cars and has credit accounts. He has four adult siblings who also live in the United States. Unsurprisingly, he is bilingual and literate in both Spanish and English.

In 2014, Murguia-Rodriguez was caught at the Arizona-Mexico border in a truck that had over 130 pounds of marijuana in the back of its extended cab as well as ammunition in the center console and driver's side door. He was indicted for possession with intent to distribute marijuana and being a felon in possession of ammunition. Murguia-Rodriguez stipulated to the marijuana's presence in the truck,

but he denied having known about the marijuana or having ever seen it.[1]

A short jury trial was conducted which lasted less than two days, including voir dire, opening and closing arguments, four witnesses' testimony, jury instructions, and jury deliberations. The jury convicted Murguia-Rodriguez of possession with intent to distribute, but acquitted him of the felon in possession of ammunition charge.

Although Murguia-Rodriguez used interpreter services at trial, at his sentencing hearing he requested to proceed in English:

> MR. BOURS: Good morning, your Honor. Ricardo Bours on behalf of Adalberto Murguia-Rodriguez.
>
> THE COURT: Good morning. And Mr. Murguia-Rodriguez, just before the case was called the interpreter indicated that you had indicated you prefer to proceed in the English language this morning. Is that correct, sir?
>
> THE DEFENDANT: Correct, ma'am.
>
> THE COURT: All right, so you're comfortable conducting these proceedings in English today?

---

[1] We hold that Murguia-Rodriguez entered into this stipulation knowingly and voluntarily in a concurrently filed memorandum disposition.

THE DEFENDANT: Oh, yes, I am, your Honor.

THE COURT: Do you want the interpreter to remain in case you have any difficulties, or is it okay with you if she leaves the courtroom?

THE DEFENDANT: She can stay.

THE COURT: But do you need her -- she has other duties. Do you need her to stay, or do you feel comfortable proceeding in English?

THE DEFENDANT: I feel comfortable proceeding in English.

THE COURT: All right. Then thank you, Ms. Garcia. You may be excused. And Mr. Bours, if you want to come on up with your client, and we'll proceed with sentencing.

Thus, at the outset of the sentencing, Murguia-Rodriguez, without any prompting from the court, affirmatively requested to proceed in English. The district court confirmed his request on the record, asked if Murguia-Rodriguez was comfortable proceeding in English, and Murguia-Rodriguez answered in English that he preferred and was comfortable proceeding in English.[2]

---

[2] While the majority suggests that Murguia-Rodriguez's statement that the interpreter "can stay" meant that he wanted the interpreter to remain present, it seems more likely that he meant that the interpreter could stay if she wanted to.

Additionally, Murguia-Rodriguez's counsel acceded to his client's request to proceed in English and to the district court's excusing the interpreter. Counsel then argued several cogent points in favor of mitigation during sentencing. Murguia-Rodriguez allocuted in English at the sentencing, expressed regret for his actions, expressed concern for his family, and promised to rehabilitate. At no time during the hearing did counsel or Murguia-Rodriguez express any concern that Murguia-Rodriguez could not understand the nature of the proceedings or communicate. The district court sentenced Murguia-Rodriguez to 55 months of imprisonment, reflecting a sentence in the middle of the guideline range. The sentencing hearing lasted 27 minutes.

## II. Legal Standard

In judicial proceedings instituted by the United States, the services of an interpreter shall be used "if the presiding judicial officer determines . . . that such party . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer . . . ." 28 U.S.C. 1827(d)(1). A defendant may waive an interpreter but "[s]uch a waiver shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter . . . the nature and effect of the waiver." 28 U.S.C. § 1827(f)(1).

## A. Plain Error Review Applies

Because Murguia-Rodriguez failed to raise any issue with the Court Interpreters Act before the district court, we review for plain error. *See United States v. Mayans*, 17 F.3d 1174, 1180 n.4 (9th Cir. 1994); *see also United States v. Jimenez*, 258 F.3d 1120, 1124 (9th Cir. 2001) (reviewing defendant's claims for plain error when an "inadvertent forfeiture of [defendant's] right to object occurred").[3] "Such review permits us to notice and correct a district court's deviation from a legal rule only if three conditions are met": (1) there is error; (2) the error is plain or obvious; and (3) the error affected the defendant's substantial rights (i.e., the error must be prejudicial). *Jimenez*, 258 F.3d at 1124 (citing *United*

---

[3] Other circuits have applied plain error review to alleged violations of the Court Interpreters Act. *See, e.g.*, *United States v. Batista*, 684 F.3d 333, 341 (2d Cir. 2012) ("Even if the argument were not waived, we would find that the District Court did not plainly err."); *United States v. Gonzales*, 339 F.3d 725, 728 (8th Cir. 2003) ("Because Gonzales failed to raise this issue before the district court, we review for plain error."); *United States v. Osuna*, 189 F.3d 1289, 1292 (10th Cir. 1999) (applying plain error review to purported violation of Court Interpreters Act when "Osuna did not raise the issue to the trial court"); *see also United States v. Maytin-Caballero*, 532 F. App'x 875, 877 (11th Cir. 2013) (per curiam) (unpublished) (applying plain error review to purported violation of Court Interpreters Act "[b]ecause Maytin–Caballero did not raise this issue before the district court"); *United States v. Amador*, 214 F. App'x 303, 305 (4th Cir. 2007) (unpublished) (applying plain error review where appellant did not object to his sentencing hearing on the ground that "the district court did not obtain his waiver of the right to an interpreter directly from him and did not employ an interpreter to explain the consequences of this waiver pursuant to the Court Interpreters Act"); *United States v. Garcia-Perez*, 190 F. App'x 461, 470 (6th Cir. 2006) (unpublished) ("Because Defendant did not object to the interpreter he received before the district court, this Court reviews the appointment of the interpreter for plain error.").

*States v. Olano*, 507 U.S. 725, 734 (1993)). "Should all three conditions be met, we have discretion to reverse the district court if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 736). "The defendant bears the burden of showing that the forfeited error was prejudicial." *Id.* at 1126.

Plain error review applies because, as the majority admits, the provision that Murguia-Rodriguez asserts that the district court violated was procedural in nature. Maj. Op. 13 ("[T]he [district] judge clearly erred in failing to comply with the procedural requirements of 28 U.S.C. § 1827(f)(1)."). The Supreme Court has held in a similar context that a defendant is required to object to a district court's failure to provide procedural admonishments. *United States v. Vonn*, 535 U.S. 55, 73 (2002). In *Vonn*, the Court held that a defendant who seeks to change his plea to guilty must object to any deficiencies in the district court's advisements provided pursuant to Federal Rule of Criminal Procedure 11 at the time they are given. *Id.* Moreover, we have held, en banc, that we are bound by *Vonn*, and have applied plain error review where a defendant did not object to a district court's failure to provide sufficient advisements in a proceeding to establish prior convictions under 21 U.S.C. § 851(b). *United States v. Severino*, 316 F.3d 939, 947 n.7 (9th Cir. 2003) (en banc).

The majority contravenes both Supreme Court law and our en banc decision by not applying plain error review. Worse yet, the majority appears to hold that any violation of the waiver provisions of the Court Interpreters Act is per se reversible error. Such a broad holding, however, has no support in the text of the Act or the case law interpreting it. To the contrary, Congress has directed federal courts reviewing criminal convictions to "give judgment after an

examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. This rule, as well as the Federal Rules of Criminal Procedure, requires that we disregard errors that are not prejudicial. *See Neder v. United States*, 527 U.S. 1, 7–8 (1999); Fed. R. Crim. P. 52(a)–(b). By ignoring the applicable legal standard, the majority vacates Murguia-Rodriguez's sentence without addressing his failure to argue that any error prejudiced him and his failure to meet his burden on appeal.

Moreover, this is the precise situation to which plain error review should apply. The Supreme Court in *Vonn* explained:

> [A] defendant could choose to say nothing about a judge's plain lapse under Rule 11 until the moment of taking a direct appeal, at which time the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place on the Government's shoulders. . . . [T]he value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on.

*Vonn*, 535 U.S. at 73.

The Supreme Court's cautionary tale is exactly what Murguia-Rodriguez did here. Murguia-Rodriguez did not

preserve the error below, or in any way suggest that the district court somehow violated the Court Interpreters Act. As discussed, Murguia-Rodriguez affirmatively asked to proceed in English, and he was represented by competent counsel at sentencing who never objected to his request to proceed in English or when the interpreter left. Instead, Murguia waited to raise his argument that the district court failed to comply with the waiver provisions of the Court Interpreters Act until after he received his sentence and was armed with new counsel. The Supreme Court and our court have rejected such "gotcha" tactics. *See id.*; *see also Gonzalez v. United States*, 33 F.3d 1047 (9th Cir. 1994) ("To allow a defendant to remain silent throughout the trial and then . . . assert a claim of inadequate translation would be an open invitation to abuse." (citation omitted)).

## B. A Party's Concession on the Standard of Review Does not Bind the Court

The majority contends that the government waived its right to rely on plain error review by failing to raise the plain error doctrine in its brief, citing *United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2015).[4] This would be a fair

---

[4] *Kortgaard* is very different case in a very different context. At issue in *Kortgaard* was whether the district court had violated the Sixth Amendment in sentencing the defendant, specifically by granting an upward departure on the ground that the guideline range calculation inadequately represented the seriousness of the defendant's criminal history. 425 F.3d at 610. The Ninth Circuit held that because the district court sentenced the defendant under the then-mandatory sentencing regime, any sentence greater than the maximum of the guideline range had to be based on facts admitted by the defendant or found by a jury beyond a reasonable doubt. *Id.* at 608–10. Because the district court found facts to support the upward departure, the panel held that the departure violated

point, except that "[a] party's concession on the standard of review does not bind the court." *United States v. Bain*, 586 F.3d 634, 639 n.4 (8th Cir. 2009); *see also United States v. Macias*, 789 F.3d 1011, 1017, n.3 (9th Cir. 2015) ("Which standard of review to apply is a pure issue of law, and, exercising our discretion, we apply the plain error standard of review notwithstanding the government's failure to argue that it should apply." (citation omitted)), *cert. petition filed*; *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1022 n.4 (9th Cir. 1997) (en banc) (O'Scannlain, J., concurring in part, dissenting in part) ("[A] party cannot, by waiver or estoppel, change the applicable standard of review."); *United States v. Ameline*, 409 F.3d 1073, 1111 (9th Cir. 2005) (en banc) (Bea, J., concurring in part and dissenting in part) ("[W]e must not abdicate our responsibility as the reviewing court to determine whether plain error has occurred."); *United States v. Williams*, 641 F.3d 758, 763-64 (6th Cir. 2011) (Tharpar, D.J., concurring) ("plain error review ought to be unwaivable"). For example, no appellate court would apply an abuse of discretion standard of review to evaluate whether a district court properly granted summary judgment, regardless of whether a party argued that abuse of discretion should apply. Similarly, the majority errs when it refuses to apply plain error review notwithstanding the government's

---

the Sixth Amendment. *Id.* at 611. Even though it appeared that Kortgaard had not preserved the Sixth Amendment error below, the Ninth Circuit considered whether the departure violated the Sixth Amendment anyway, declining to apply plain error review. *Id.* at 610. During Kortgaard's appeal, the Supreme Court issued the watershed cases *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), revolutionizing criminal sentencing jurisprudence. Thus, the Ninth Circuit's decision to overlook the defendant's failure to object to his sentence in *Kortgaard* has little bearing on this case.

ostensible failure and Murguia-Rodriguez's failure to argue that plain error review should apply.[5]

## III.  The District Court Never Determined Whether Murguia-Rodriguez's English Skills Limited His Ability to Communicate in or Understand His Sentencing Proceedings, as He Concedes

Regardless of what standard of review applies, it is not clear that the district court erred in excusing the interpreter at Murguia-Rodriguez's sentencing hearing.  Under the Court Interpreters Act, if Murguia-Rodriguez was not entitled to an interpreter at his sentencing proceedings, then no error existed when the district court at sentencing relieved the interpreter after he requested to proceed in English.  *See, e.g.*, *United States v. Si*, 333 F.3d 1041, 1045 (9th Cir. 2003); *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986). Here, there was no finding that Murguia-Rodriguez's English language skills "inhibit[ed] [his] comprehension of the proceedings or communication with counsel or the presiding judicial officer." *See* 28 U.S.C. § 1827(d)(1).  He admits the district court was never asked to determine and never determined whether he needed an interpreter.  Indeed, on

---

[5] The majority also admits that this "waiver of waiver" doctrine is a discretionary one.  Maj. Op. 16–17 n.9; *see also Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012).  I would exercise discretion to confront this issue of pure law: what standard of review to apply when a district court fails to articulate the nature and effect of a waiver prior to excusing a court interpreter.  The parties' confusion as to the correct standard of law favors our consideration of this issue.  Both parties, relying on our circuit's case law, cited the "clear error" standard.  But those cited cases addressed whether the district court had appropriately determined whether an interpreter was required, not whether the district court complied with the waiver provisions in 28 U.S.C. § 1827(f).

appeal Murguia-Rodriguez seeks only a "remand [of] the case to the district court with instructions that it determine whether Mr. Murguia-Rodriguez's language abilities inhibited his comprehension of, or ability to express himself clearly in, the sentencing hearing – and if so, that it conduct a de novo sentencing hearing at which an interpreter will be available to assist him." The majority ignores this concession.

Instead, the majority insists that the district court had already determined that Murguia-Rodriguez was entitled to an interpreter because a docket entry from his first appearance noted that an interpreter was "required." Maj. Op. 9. The majority thus concludes that the only way the district court could excuse an interpreter at the sentencing was if it fully complied with the waiver provision in 28 U.S.C. § 1827(f)(1). But the single reference in a docket entry that an interpreter is "required" is not a sufficient factual finding as to whether Murguia-Rodriguez's English language skills inhibited his comprehension of the proceedings or communication with counsel or the judge.[6] The transcript reveals no evidence that the district court assessed Murguia-Rodriguez's English language or comprehension skills, let alone determined that they inhibited his ability to understand the proceedings or communicate. Dist. Ct. ECF No. 58.

---

[6] Busy district courts will likely be surprised to learn that a mere court clerk docket entry that an interpreter was "required" at a criminal defendant's first appearance is sufficient in itself to allow the Ninth Circuit to hold that defendant's English language skills inhibited his comprehension of and ability to communicate in sentencing proceedings under 28 U.S.C. § 1827.

Although the court used an interpreter at Murguia-Rodriguez's first appearance, district courts are advised to appoint an interpreter out of an abundance of caution if a defendant's English language skills are in doubt. *See, e.g.*, Federal Judicial Center, *Benchbook for U.S. District Court Judges* 1 (6th ed. 2013) ("If you have any doubts about the defendant's ability to speak and understand English, consider appointing a certified interpreter in accordance with 28 U.S.C. § 1827."); *id.* at 27 ("If the defendant has an attorney, ask counsel if he or she has been able to communicate with the defendant. If you doubt the defendant's capacity to understand English, use a certified interpreter.").

In fact, at Murguia-Rodriguez's next appearance, his detention and preliminary hearing, his attorney represented that he was "English speaking." Dist. Ct. ECF No. 59 at 2 ("Ricardo Bours, Your Honor, for Adalberto Murguia-Rodriguez, present, in custody, English speaking.").[7] Moreover, after his trial, the U.S. Probation Department interviewed Murguia-Rodriguez and described him as "bilingual and literate in both Spanish and English" in his pre-sentence report. There is no indication that Murguia-Rodriguez objected to the description of himself as bilingual, and the district court adopted the facts in the pre-sentence report as true.

Murguia-Rodriguez's testimony at trial that he understood 60% of English and spoke 60 to 70% of English is not conclusive that his language abilities impeded his ability to communicate or understand his sentencing proceedings. At

---

[7] Mr. Bours represented Murguia-Rodriguez in his pretrial matters, during trial, and at sentencing, but he is not Murguia-Rodriguez's attorney on appeal.

most, the potential conflict between Murguia-Rodriguez's trial testimony, his attorney's representation that he spoke English, and the Probation Department's conclusion that he was bilingual, underscores the need for the district court to make an express factual finding under the Court Interpreters Act as to whether his English language skills inhibited his ability to understand or communicate at his sentencing proceeding.

Because the district court never determined whether Murguia-Rodriguez's English was limited and because Murguia-Rodriguez concedes that the district court never made such a finding, I dissent from the majority's sua sponte appellate fact-finding.  If there are questions regarding Murguia-Rodriguez's language skills, the proper remedy is a remand to the district court for fact-finding, not a vacatur of his sentence.[8]  *See Si*, 333 F.3d at 1045 (9th Cir. 2003) ("remand[ing] the matter to the district court solely for the purpose of determining . . . whether Si's language abilities inhibited his comprehension of the proceedings or his ability to communicate with counsel and the court"); *Lim*, 794 F.2d at 470 (remanding to district court "for further findings and appropriate further evidentiary proceedings" where "it was very difficult to determine whether any lack of interpreter's

---

[8] The majority objects that the district court appeared to present Murguia-Rodriguez with a choice to either (1) proceed in English without the interpreter or (2) proceed in Spanish with an interpreter.  Maj. Op. 12. The majority would require that the district court explicitly state that Murguia-Rodriguez had a third option: proceed in English with the interpreter present in case he needed something translated.  There is no such requirement in the Court Interpreters Act.  Moreover, nothing prohibited Murguia-Rodriguez or his counsel from requesting that the interpreter stay for that precise reason, or requesting that the interpreter return to the sentencing proceeding after it had begun.

assistance affected the ability of any of the defendants to understand the proceedings or communicate with counsel"); *cf. Gonzalez v. United States*, 33 F.3d 1047, 1050 (9th Cir. 1994) (no remand necessary because "the district court judge here specifically determined that Gonzalez's language difficulties did not constitute a 'major' problem"). The majority grants relief that Murguia-Rodriguez has not even sought.

## IV.  Even Assuming That The District Court Plainly Erred, Murguia-Rodriguez Has Not Met His Burden of Demonstrating Prejudice

Even ignoring Murguia-Rodriguez's concession on appeal, remand would not be required. Murguia-Rodriguez has not met his burden of demonstrating any prejudice. *See Olano*, 507 U.S. at 734. As noted previously, because Murguia-Rodriguez failed to raise any issue with the Court Interpreters Act before the district court, he bears the burden to show that any error affected his substantial rights (i.e., the error must be prejudicial). *See Mayans*, 17 F.3d at 1180 n.4; *Jimenez*, 258 F.3d at 1124 (citing *Olano*, 507 U.S. at 734). But he does not argue that if the district court had explained the "nature and effect" of waiving an interpreter he would have insisted that the interpreter remain. *See* 28 U.S.C. § 1827(f)(1). Nor does Murguia-Rodriguez assert that if an interpreter had remained that his sentencing would have changed in any way. Murguia-Rodriguez allocuted in English at the sentencing, expressed regret for his actions, expressed concern for his family, and promised to rehabilitate. He does not claim that he was unable to understand the proceedings, or proffer any additional information that he would have been able to express if an interpreter had remained.

Although the government only belatedly argues that any error was harmless, this does not excuse Murguia-Rodriguez from his burden to establish prejudice. As the Supreme Court stated in *Olano*:

> In sum, [defendants] have not met their burden of showing prejudice under [plain error review of] Rule 52(b). Whether the Government could have met its burden of showing the absence of prejudice, under [harmless error review of] Rule 52(a), if [defendants] had not forfeited their claim of error, is not at issue here. This is a plain-error case, and it is [defendants] who must persuade the appellate court that the deviation . . . was prejudicial.

507 U.S. at 741. Here, Murguia-Rodriguez has not even attempted to meet his burden of demonstrating prejudice.

In any event, we have discretion to overlook a failure to argue harmlessness when "the harmlessness of any error is clear beyond serious debate and further proceedings are certain to replicate the original result." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1100 (9th Cir. 2005). Applying the factors in *Gonzalez-Flores*, any error here was harmless. First, the record is not lengthy or complex. The majority's sua sponte discovery and citation of the docket entry regarding a "required" interpreter emphasizes this point. Second, as previously discussed, the harmlessness of the district court's failure to explain the nature and effect of Murguia-Rodriguez's waiver is beyond doubt as he sought to proceed in English and even he does not contend that he was unable to communicate in or understand his sentencing

proceedings. Thus, ordering new sentencing proceedings requires "ultimately futile proceedings in the district court." *See id*.

\* \* \*

"[T]he value of finality requires defense counsel to be on his toes, not just the judge, and the defendant who just sits there when a mistake can be fixed cannot just sit there when he speaks up later on." *Vonn*, 535 U.S. at 73. The district court may have erred by not explaining the nature and effect of waiving an interpreter prior to dismissing the interpreter at Murguia-Rodriguez's sentencing. But Murguia-Rodriguez failed to object at his sentencing and fails to show any prejudice. Our Supreme Court and Ninth Circuit precedent informs us that the correct standard of review is plain error review, and the record demonstrates that any error was not prejudicial by any measurement.

District courts are already overwhelmed with the need for interpreters. The District Court of Arizona alone conducts over 56,000 proceedings per year with the assistance of a Spanish interpreter.[9] The majority's approach will waste judicial resources and encourage mischief and manipulation in the district courts, likely without benefit to either Murguia-Rodriguez or future defendants. It may impede bilingual and multi-lingual defendants from proceeding in English at sentencing hearings, even if that is their preference. District courts may insist that defendants use interpreters or that interpreters remain present even though they are not needed

---

[9] *See* Interpreter Usage by District Courts, 2014, United States Courts for the Ninth Circuit, 2014 Annual Report at 77, http://www.ce9.uscourts.gov/publications/AnnualReport2014.pdf.

or wanted for fear that a hyper-technical violation of the Court Interpreters Act will result in an automatic reversal of a lawfully imposed sentence.  Worse yet, the majority's approach may encourage defendants to allow the informal dismissal of an interpreter, thereby assuring an issue on appeal, exactly the scenario proscribed by the Supreme Court in *Vonn*.  Accordingly, I dissent.[10]

---

[10] As I find no error and no prejudice by the district court with respect to the Court Interpreters Act, I would reach Murguia-Rodriguez's other appellate challenges to his sentence, which I find to be without merit.  I would affirm the district court in all respects.